[Civ. No. 601.   Fourth Appellate District.—February 9, 1932.]

T. D. McKEEHAN, Respondent, v. PACIFIC FINANCE CORPORATION (a Corporation), Appellant.

Overton, Lyman & Plumb, Leonard Evans and Cecil A. Borden for Appellant.

William P. Webb and McFadden, Holden & Friis for Respondent.

JENNINGS, J.—From a judgment in favor of plaintiff decreeing cancellation of· a promissory note executed by plaintiff and made payable to defendant, defendant appeals. Plaintiff's complaint, which was filed on August 16, 1928, embraces three causes of action. The first alleges that there was an entire lack of consideration for the note, that the defendant has demanded payment of it and plaintiff has reasonable apprehension if it is left outstanding he will thereby suffer serious injury. The second alleges that the indebtedness for which the note was given was an indebtedness due to defendant from a certain corporation and that plaintiff was induced to execute the note through the false and fraudulent representation of defendant that the indebtedness of the corporation to defendant had been incurred subsequent to October 21, 1927, the date on which plaintiff was elected director and secretary of the corporation and that plaintiff, acting in reliance upon such false representation and under a mistaken belief that he was the owner of one-third of the capital stock of the corporation, executed the note. The third cause of action alleges that the total indebtedness of the corporation to defendant had been incurred prior to October 21, 1927; that on

November 17, 1927, the corporation caused thirty-three and one-third shares of its capital stock to be issued to plaintiff, but that no permit for the issuance of stock had been obtained from the commissioner of corporations of the state of California; that plaintiff was not on October 21, 1927, or at any time a stockholder of the corporation, but believing that he was and that the indebtedness had been incurred subsequent to October 21, 1927, and that he was therefore liable for one-third of such indebtedness, he executed the note without receiving any consideration therefor; that plaintiff did not discover that the indebtedness had been incurred prior to October 21, 1927, or that he was not in fact a stockholder in the corporation until May 24, 1928. From the foregoing it appears that plaintiff seeks the equitable remedy of cancellation of the instrument on three grounds. These are total lack of consideration, fraud and mistake. The trial court found in plaintiff's favor on all grounds alleged and entered its decree canceling the note and that plaintiff was entitled to a return of certain money payments made by him on the note. The court's findings are attacked as not being supported by the evidence and various contentions which it is urged warrant a reversal of the judgment are advanced. The contention presented will hereinafter receive detailed consideration. Inasmuch as the principal ground for reversal rests in the claim that the findings are lacking in evidentiary support, a review of the evidence produced during the trial is in order.

It appears that in the month of February, 1927, plaintiff was first employed as an automobile salesman for J. W. Schwab in the city of Anaheim, California. At that time Mr. Schwab's business was carried on under the name of Whippet Knight Sales Company. Associated with Schwab in the business were H. C. Mapes and H. K. Handiges. During the month of May, 1927, a corporation was formed under the name, J. W. Schwab, Inc. The three incorporators were Schwab, Mapes and Handiges. These three men were also the three directors and officers of the corporation. The capital stock was stated to be $10,000 and each share of stock was to have a par value of $100. On May 23, 1927, the assets of the Whippet-Knight Sales Company were transferred to the corporation which thereafter carried on

the business. Plaintiff continued in his employment as automobile salesman for the corporation. On July 19, 1927, plaintiff loaned to the corporation the sum of $2,000 for which he was to receive stock in the corporation at such time as a permit for the issuance of stock should be granted by the state corporation department. During the month of September, 1927, further advances totaling $1400 were made to the corporation by plaintiff under the same arrangement. On October 21, 1927, at a meeting of the three directors of the corporation, Handiges and Mapes resigned as directors and officers and plaintiff was elected director and secretary-treasurer of the corporation. On November 17, 1927, a meeting of the directors of the corporation was held, at which meeting H. C. Mapes was present. At this time Mapes falsely informed the directors that a permit to issue stock had been granted by the state corporation department. Thereupon two certificates for thirty-three and one-third shares of stock each were issued to J. W. Schwab and a third certificate for thirty-three and one-third shares of stock was issued to plaintiff. Each certificate was signed by J. W. Schwab as president and by plaintiff as secretary. During the latter part of November, 1927, J. W. Schwab and the plaintiff became suspicious that the corporation was not in sound financial condition and employed an auditor for the purpose of having the books of the corporation audited. Three days after the auditor commenced his audit of the books H. C. Mapes absconded. A former bookkeeper of the corporation was called in to assist the auditor and when plaintiff made inquiry of him as to the corporation's financial condition he was informed that there were numerous debts and unpaid obligations. It was later discovered that the corporation was insolvent, its total indebtedness amounting to approximately $21,000 with assets that did not exceed $7,000 in value. It was about the time that the former bookkeeper returned that, according to plaintiff's testimony, he first learned that the corporation was heavily indebted to the defendant. This indebtedness, it was subsequently discovered, amounted to $10,820.64. It consisted of advances made by the defendant to the corporation for the purchase of automobiles which were placed on the floor of the corporation's salesroom. On or about December 6, 1927, plaintiff and J. W. Schwab were present

at a conference with various officers and representatives of the defendant at the office of defendant in the city of Los Angeles. At this meeting the total indebtedness of J. W. Schwab, Inc., was declared. It was then proposed that Schwab and the plaintiff should execute promissory notes payable in monthly installments to defendant to further secure payment of the debt and that defendant would continue to finance the corporation on a somewhat more favorable basis than had theretofore been done to the end that the corporation might be enabled to rehabilitate its shattered finances. To this plan J. W. Schwab agreed, expressing his willingness to execute his note for two-thirds of the total indebtedness provided plaintiff would execute a note for the remaining one-third. Plaintiff, however, demurred because he said he was not convinced of his liability as he had only recently become a member of the corporation and knew nothing about the indebtedness claimed to be due. The question was also raised by plaintiff at this meeting as to whether he would be liable for any indebtedness of the corporation incurred prior to the date on which he became a director of the corporation and plaintiff testified that the vice-president of defendant said to him that as he saw it if the indebtedness was incurred by the corporation prior to October 22, 1927, plaintiff would not be liable for it. At the meeting of December 6th, it was discovered that no permit for the issuance of stock in the corporation had been granted by the state corporation department. A few days subsequent to the above-described meeting N. L. McLaughlin, a representative of defendant, called upon plaintiff and requested him to sign a note which had been prepared for an amount which represented one-third of the indebtedness of the corporation to defendant. Plaintiff, according to his testimony, again brought up the question of when the indebtedness was incurred. At plaintiff's suggestion the two of them went to the office of plaintiff's attorney where plaintiff was advised that prior to signing the note he should fully satisfy himself whether or not the automobiles for whose purchase the indebtedness had been incurred had been "floored" subsequent to October 22, 1927. Relative to the date, October 22, 1927, plaintiff testified that the meeting of the board of directors of the corporation at which he was elected a director occurred on October 22, 1927. The min-

utes of this meeting, however, recite that it took place on October 21, 1927, and this, together with other evidence, seems to fix the correct date of this meeting as October 21, 1927. After leaving the attorney's office, further discussion was had between plaintiff and McLaughlin in regard to the dates on which the various automobiles were "floored". According to plaintiff's testimony it was finally suggested that McLaughlin should telephone to the office of defendant in Los Angeles for the purpose of procuring this information. Plaintiff's testimony is to the effect that McLaughlin left him ostensibly for the purpose of making the telephone call and shortly thereafter returned and announced that he had done so and that he had been advised by defendant's Los Angeles office that all automobiles for whose purchase the various advances comprising the total indebtedness of the corporation to defendant were made had been "floored" subsequent to October 22, 1927. Thereupon plaintiff executed the note which he seeks by this action to cancel. It may be remarked in passing that plaintiff's testimony relative to the statement by McLaughlin that he had telephoned defendant's office in Los Angeles and that he was informed that the automobiles had been "floored" subsequent to October 22, 1927, is directly and completely contradicted by the testimony of McLaughlin. It may also be remarked that plaintiff testified that he made no investigation himself in regard to the matter of dates but that he left it to be discovered by J. W. Schwab and McLaughlin.

The court found as hereinbefore stated that the plaintiff received no consideration for the note which he executed. Assuming, for the purpose of considering whether this finding is supported by the evidence, that there was no inducing misrepresentation of fact made by appellant to respondent, it appears open to serious doubt whether the finding is warranted by the evidence. There is no dispute that respondent was elected a director and secretary of the corporation on October 21, 1927, and that he thereupon entered upon the duties incident to such offices. The evidence discloses that he was in attendance at meetings of the board of directors and participated as a director in the carrying on of such business as was presented to the board; that he signed checks as secretary and as secretary signed the stock certificates that were issued to himself and Schwab following the repre-

sentation by H. C. Mapes that a permit for the issuance of stock had been obtained from the commissioner of corporations. ▌ It is true that at the time he was elected director he was not a stockholder in the corporation and therefore ineligible to be a director under the provisions of section 305 of the Civil Code as it existed at the time of his election. But the fact that he was not then a stockholder would not prevent his being a *de facto* director. (*San Jose Sav. Bank* v. *Sierra Lumber Co.*, 63 Cal. 179; *Consumers Salt Co.* v. *Riggins*, 208 Cal. 537 [282 Pac. 954].) A *de facto* director must perform the duties enjoined by law with the same fidelity as a regularly elected director and is subject to the same statutory liability for any failure of duty occurring during the time when he is assuming to act as a director. (6a Cal. Jur., sec. 595; *Kinard* v. *Ward*, 21 Cal. App. 92 [130 Pac. 1194].) ▌ Among the statutory limitations upon the powers of directors of corporations it is specifically provided in section 309 of the Civil Code as this section read at the time respondent was assuming to act as director of the corporation, that directors must not create any debts beyond the subscribed capital stock of a corporation. Assuming that the amount of stock for which the corporation was incorporated, to wit, $10,000, was fully subscribed, the evidence shows beyond question that, prior to the execution of the note by respondent, debts amounting to at least $21,000 had been incurred by the corporation. If debts in excess of the subscribed capital stock were incurred during the time that respondent acted as director, a penal liability for the full amount of such debts attached to respondent under the provisions of section 309 of the Civil Code. It would therefore appear that there was some justification for appellant's claim that respondent was responsible for a portion of the indebtedness due from the corporation and, in the absence of fraud, an agreement to settle such a claim would not be void as lacking any consideration to support it. It is well settled that the compromise of a claim made in good faith, even though the claim is of doubtful validity, constitutes sufficient consideration for the execution of a new contract. (*Wetzel* v. *Cale*, 175 Cal. 208 [165 Pac. 692]; *Gardner* v. *Watson*, 170 Cal. 570 [150 Pac. 994]; *Union Collection Co.* v. *Buckman*, 150 Cal. 159 [119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568, 88 Pac. 708];

*Fairchild* v. *Cartwright*, 39 Cal. App. 118 [178 Pac. 333].)
But it must be borne in mind that absence of fraud is an
indispensable element to the application of the rule.

The court also found that respondent in executing
the note acted under a mistaken belief that he was a stock-
holder in the corporation and therefore subject to the ordi-
nary liability of a stockholder for a *pro rata* share of the
corporate indebtedness and that respondent did not discover
his mistake in this regard until May 24, 1928. The evidence
does not seem to support such a finding. Respondent him-
self testified that on December 6, 1927, the very day on which
he attended a conference with officers of appellant, he visited
the office of the commissioner of corporations and then
learned from that official that no permit for the issuance of
stock in the corporation had been obtained. Prior, there-
fore, to the execution of the note, respondent was advised
that the stock issued to him on November 17, 1927, had been
issued without proper authorization and he was charged
with knowledge of its invalidity. In so far as respondent
bases his action for cancellation of the note upon mistake,
the mistake was one not of the fact that he was the owner
of stock validly issued but a mistake as to the legal effect of
his owning stock which was invalid. Such a mistake was
one of law, and in the absence of fraud furnishes no ground
for the interposition of equity. (*Gardner* v. *Watson, supra;
Klinker* v. *Guarantee Title Co.*, 98 Cal. App. 469, 479 [277
Pac. 177].) There is no evidence appearing in the record
indicating that there was any misrepresentation by appel-
lant that the indebtedness was incurred subsequent to the
date on which invalid stock was issued to respondent. What-
ever representation was made respecting the incurring of the
indebtedness related solely to the date on which respondent
became a director.

The trial court's finding that appellant falsely repre-
sented that the automobiles for whose purchase the various
sums making up the total indebtedness were advanced were
"floored" subsequent to October 21, 1927, is made the object
of special attack. The evidence relating to this feature of
the case is, as heretofore noted, in direct conflict. The trial
court was at liberty to accept respondent's testimony as true
and correct and evidently did so in view of its finding that
there was a misrepresentation of fact intentionally made

which induced respondent to execute the note. Since there is evidence to support the court's finding this court may not disturb it. ■ Appellant, however, contends that, as it is conceded, respondent never became a legal stockholder in the corporation, the representation that the automobiles were delivered subsequent to the date on which respondent was elected director of the corporation, assuming that such representation was made, related to an entirely immaterial matter and such representation, in accordance with the well-established rule that misrepresentation, in order to furnish the basis for equitable relief, must be a misrepresentation relating to a material fact, does not warrant the harsh judgment of cancellation. Two answers suggest themselves to this contention. First, that, since respondent was a *de facto* director, he might be subject to a statutory penal liability under the provisions of section 309 of the Civil Code for debts incurred in excess of subscribed capital stock during the time he was such *de facto* director. From this aspect, the date on which he was elected and entered upon the duties of a director becomes material and the fact as to whether the automobiles were "floored" before or after this date is important. Second, that the test of materiality in this regard is whether without the representation complained of, the note whose cancellation is sought would have been executed. (Sec. 1568, Civ. Code; *Greenawalt* v. *Rodgers,* 151 Cal. 630 [91 Pac. 526].) If this test is applied it is not open to question that appellant's representation that all the automobiles were "floored" subsequent to October 21, 1927, was one in regard to a material fact since the evidence establishes that both prior and subsequent to the execution of the note respondent was primarily concerned in endeavoring to discover whether the cars were "floored" before or after the date of his election as director.

■ It is also urged that the evidence conclusively shows that at least five of the automobiles for which the indebtedness was incurred were actually delivered to respondent on or subsequent to October 21, 1927. Conceding that such is the case, and it may be admitted that the evidence so indicates, it will not, however, suffice to justify a false representation that the total number of automobiles for which the indebtedness was incurred were delivered on or subsequent

to the date mentioned. If the statement was false it is no defense to say that it was partially true.

Another objection raised relates to the alleged lack of diligence manifested by respondent in failing to make an investigation prior to signing the note for the purpose of discovering whether or not the automobiles had been delivered to the corporation subsequent to the date of his election as director. The evidence shows that the books of the corporation were not turned over to him when he became secretary of the corporation, and that he had no opportunity to see them until after Mapes had absconded, and further that when he had access to them, he could not determine from the records avaliable the dates on which the various automobiles had been "floored". Even if it be conceded that means of knowledge were open to respondent yet if he relied and had the right to rely upon the representation made by appellant's agent, he is not precluded from recovery. (*French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515]; *Teague* v. *Hall*, 171 Cal. 668 [154 Pac. 851].) Under the circumstances presented herein, it is clear that the facts upon which the representation was based were within the knowledge of appellant. Its records obviously contained the information as to the time of delivery of the automobiles. These records were under appellant's control and furnished certain and definite answer to respondent's inquiry. Respondent was justified in relying upon the representation made to him by appellant's agent and the court's finding that he did so rely has evidentiary support.

It is finally contended that since respondent is seeking to rescind his contract on the ground of fraud it was incumbent upon him to restore whatever benefit he derived from the transaction. This benefit it is said, consisted in part, at least, of appellant continuing to advance funds for the purchase of automobiles by J. W. Schwab, Inc., on a more favorable basis than had been done prior to the execution of the note. A sufficient answer to this contention is presented in the court's express finding that appellant's action in this regard proceeded from no other consideration than a desire on appellant's part to carry on its business at the usual and customary profit to itself. This finding is not lacking in evidentiary support. Furthermore, the real benefit secured by respondent as a result of his execution of the

note was a forbearance of suit on the part of appellant. This benefit was expressly surrendered by the institution of the present action which resulted in the filing of a cross-complaint by appellant wherein it was sought to recover on a promissory note, the principal of which admittedly represents the proportionate share of the indebtedness of the corporation to appellant for which respondent would have been liable if in fact he had been a stockholder at the time the indebtedness was incurred.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 7, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1932.