**SOUTH SEAS CORPORATION,**
**Plaintiff-Appellee,**

v.

**Vicente S. SABLAN, et al.,**
**Defendants-Appellants.**

**DCA Nos. 80–9023, 80–9005.**

United States District Court,
N. Mariana Islands,
Appellate Division.

Oct. 21, 1981.

William Fitzgerald, Cushnie & Fitzgerald, Saipan, Cm., for plaintiff-appellee.

Randall T. Fennell, Saipan, Cm., for defendants-appellants.

Before LAURETA and DUENAS, District Judges, and MOORE,* Designated Judge.

## OPINION

LAURETA, District Judge:

Vicente Sablan and Hong Kong Fruit Sugar Company (H.K.F.S.C.) appeal the Commonwealth Trial Court's decision that appellee South Seas Corporation (South Seas) owns land to which Sablan presently holds title and upon which South Seas' hotel complex sits. The trial court so concluded after determining that Sablan and H.K.F.S.C.'s owner (Koyama), while serving as South Seas directors, obtained funds for South Seas and misused the money to finance Sablan's private purchase of the land. Judgment against Sablan rested upon his violation of his fiduciary duty as a director. The court predicated judgment against H.K.F.S.C. upon the rationale that the company was merely an alter ego through which its owner breached his fiduciary duty to South Seas.

The issue is whether the findings supporting the lower court's decision were clearly erroneous under Federal Rule of Civil Procedure 52(a). We hold that they were not. We affirm.

* Commonwealth Trial Court Judge sitting pursuant to 48 U.S.C. § 1694b. of Appeals, Ninth Circuit.

## I.

## FACTS

The Court has consolidated DCA 80–9023[1] and DCA 80–9005[2] pursuant to the parties' stipulation. Our affirmance in 9023 in practical effect also resolves 9005. Therefore we discuss only the relevant facts which concern 9023.

The events culminating in this litigation occurred from 1975 through December 1978. During that period the board of directors of South Seas consisted of appellant Vicente Sablan, his brother Jesus Sablan, Genro Kashiwa, and Kenichi Koyama, the owner of appellant H.K.F.S.C.[3] The Sablans and Kashiwa were the apparent majority shareholders of South Seas under a purported 1974 stock sale.[4] Acting as majority shareholders, these individuals had elected themselves and Koyama to directorships. Kashiwa was the corporation's president and Vicente Sablan was its vice-president.

Few conventional corporate records document South Seas' receipts and expenditures. The records of a bank trust account (the Kashiwa account) are the most significant such evidence. Koyama was the account's trustor and Kashiwa was its trustee. It is uncontroverted that South Seas funds were intermittently channeled through this account.

In 1975 the Sablans, Kashiwa and Koyama (the Kashiwa directors) became defendants in litigation over the stock ownership of South Seas. This suit was tried in the Trust Territory High Court Trial Division. The parties stipulated to the establishment of a management committee. Under the stipulation all South Seas finances and transactions were to be handled during the pendency of the action through a management committee bank account. The stipulation remained in effect until the Trial Division decision in favor of the Kashiwa directors on May 26, 1977. In December 1978 the High Court Appellate Division overturned the Trial Division's ruling.

In the period between the formation of the management committee and the Appellate Division decision, three transactions around which this case centers allegedly occurred.

### a. 1975: Ching Loan

Contrary to their stipulation, in 1975 the Kashiwa directors authorized a $300,000 loan to South Seas from Young Mo Ching. Koyama allegedly executed the transaction for South Seas.

In Koyama's deposition considered by the court below, Koyama testified that Ching disbursed the loan to South Seas through the Kashiwa account between September 1975 and sometime in 1976. The Kashiwa account records contradict that testimony. The records disclose that from February 1975 through August 1979 the Kashiwa account received $165,000 from all sources and only $65,000 from Ching.

### b. June 1978: Land Purchase

In June 1978 Vicente Sablan negotiated through an intermediary to purchase the land upon which South Seas' hotel complex is located. The sellers demanded $300,000 for the property.

Purporting to act for South Seas, Koyama obtained $300,000 in Hong Kong for Sablan's personal venture. Koyama placed the funds into H.K.F.S.C. Koyama claims that H.K.F.S.C. borrowed the money from

1. DCA 80–9023 appeals the decision in Commonwealth Trial Court Civil Action No. 80–12. In 80–12 the lower court adjudicated that South Seas owns the disputed land.

2. DCA 80–9005 appeals the judgment in Commonwealth Trial Court Civil Action No. 68–79. In 68–79 the lower court injunctively enforced South Seas' right of quiet enjoyment as the land's apparent tenant.

3. Koyama is the president, the majority shareholder, and a director of H.K.F.S.C. The trial court correctly characterized him as the company's owner.

4. In *South Seas Corporation v. Sablan*, 7 T.T.R. 636 (H.C.App.Div.1978), the Trust Territory High Court held that the alleged sale was a nullity. The supposed seller had previously transferred title to the controlling shares to another party. *Id.* at 645, 647, 650, 652. This decision reversed a 1975 High Court Trial Division ruling that the Sablans and Kashiwa had validly obtained the shares.

Ching and another person. No record evidence substantiates that claim. Koyama handcarried $300,000 to Saipan with which Sablan purchased the land on or about June 15, 1978.

Sablan and H.K.F.S.C. assert that the transaction was not consummated with South Seas funds. Pointing to alleged documentation introduced at trial, they state that Sablan financed it through a separate and private loan from H.K.F.S.C.

c. *September 1978: Showa Kigyo Loan*

After authorization by the Kashiwa directors in December 1977, in September 1978 Koyama secured another $300,000 loan for South Seas. In this instance Koyama obtained the funds from Showa Kigyo Company, a corporation of which Koyama was also a director.

Showa incrementally deposited the funds into the Kashiwa account between September and October 1978. Withdrawals from the account, and payments to Ching and to a Ching intermediary, followed the Showa deposits almost contemporaneously. Sablan and H.K.F.S.C. state that the 1978 disbursements to Ching were repayments of the alleged 1975 Ching loan. They deny any connection between the disbursements and Sablan's land purchase.

On January 29, 1980 South Seas instituted this action against Sablan and Koyama. After the trial court quashed service on Koyama, South Seas amended its complaint to state a cause against Sablan and H.K.F.S.C.

On September 19, 1980 the trial court ruled for South Seas. Its memorandum opinion contained the following factual findings and conclusions of law:

1. The alleged 1975 Ching loan supposedly repaid in 1978 never occurred;

2. Using his alter ego company H.K.F.S.C. as a conduit, Koyama financed Sablan's land acquisition with South Seas funds obtained by Koyama acting on behalf of South Seas;

3. Through the Kashiwa account, Koyama diverted the corpus of the September 1978 Showa-South Seas loan to repay the unknown source of corporate funds which financed Sablan's land purchase;

4. Through the conduct above, Sablan, Koyama, and Kashiwa breached their fiduciary duty as directors of South Seas.

On October 9, 1980 the trial court entered a judgment which declared South Seas to be the owner of the land acquired by Sablan. The judgment also awarded South Seas its costs and $32,147.95, with interest, in rent allegedly owed to Sablan and impounded in a bank account by court order. This appeal followed.

## II.

### STANDARD OF REVIEW

Because appellants dispute the trial court's factual findings, the applicable standard of appellate review is narrow. Federal Rule of Civil Procedure 52(a) mandates that trial court factual findings not be disturbed unless they are clearly erroneous.

■ A finding is clearly erroneous when, even though some evidence supports it, the entire record produces the definite and firm conviction that the court below committed a mistake. *McAllister v. U. S.*, 348 U.S. 19, 20, 99 L.Ed. 20, 75 S.Ct. 6, 8 (1954); *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1353 (9th Cir. 1980). The appellate court accords particular weight to the trial judge's assessment of conflicting or ambiguous evidence. *See Guzman v. Pichirilo*, 369 U.S. 698, 702, 8 L.Ed.2d 205, 82 S.Ct. 1095, 1098 (1962). The test is whether the lower court rationally could have found as it did, rather than whether the reviewing court would have ruled differently. *Bianchini v. Humble Pipeline Co.*, 480 F.2d 251, 253 (5th Cir. 1973).

## III.

### DISCUSSION

a. *Use Of Corporate Funds*

■ The trial court's assessment of the conflicting evidence persuaded it that the

1975 Ching loan never occurred and that South Seas funds had financed Sablan's land purchase. The court rationally could have deduced those findings from the record. For this reason the findings were not clearly erroneous.

Appellants endeavored through Koyama's deposition to prove the Ching loan. Noting Koyama's evasiveness and unresponsiveness, the trial court questioned the credibility of his testimony. Moreover, the bank records of South Seas, the 1975 management committee, and the Kashiwa account amply refuted the deposition. The court below resolved the evidentiary conflict in South Seas' favor. Under the narrow review standard which governs here, this Court upholds that determination.

The finding that appellants diverted South Seas money into Sablan's land purchase receives equal appellate deference. As the lower court observed, the evidence firmly established Koyama's instrumental role in obtaining loans for South Seas in 1978. The evidence additionally disclosed the twisted and transparent journey of the loan proceeds into the hands of the sellers of the property. Finally, the record failed to credibly document the alleged Ching-H.K.F.S.C. "loan" which H.K.F.S.C. supposedly then extended to Sablan.

The court below permissibly concluded that H.K.F.S.C. was a mere alter ego through which Koyama squandered South Seas money. Koyama owned, presided over, and controlled H.K.F.S.C. The record suggests that H.K.F.S.C. ostensibly engaged in manufacturing and other businesses, yet lacked separate office facilities or physical plant. These facts reasonably support the trial court's finding.

b. *Fiduciary Duty To South Seas*

■ The court below correctly concluded that the Kashiwa directors had fiduciary duties to South Seas. During the operative transactions they were the corporation's recognized and self-elected directors. The

1978 High Court decision established that the Sablans and Kashiwa were not the corporation's controlling shareholders.[5] Therefore the election of the Kashiwa directors was technically defective because the Sablans and Kashiwa did not legally own the majority shares with which they voted the directors into office. Yet, even though the directors were not properly elected "de jure" directors, they were "de facto" directors with the same fiduciary duties as de jure directors.

■ A de facto officer is one who actually possesses an office under color of election or appointment and who continuously exercises its functions. *Indep. Lead Mines Co. v. Kingsbury*, 175 F.2d 983, 986 (9th Cir. 1949), *cert. denied* 338 U.S. 900, 94 L.Ed. 554, 70 S.Ct. 249 (1949); *Wolff v. Arctic Bowl Inc.*, 560 P.2d 758, 764 n.7 (Alas.1977). Under this established definition the Kashiwa directors clearly were de facto officers. The record reveals, and appellants concede,[6] that the Kashiwa directors continuously exercised the functions of their offices under the belief that they were de jure electees.

■ It is settled that de facto directors have the same fiduciary duties as de jure directors. A de facto officer may not exercise the prerogatives of a corporate position and yet avoid its attendant fiduciary duties and liabilities. *In re Globe Drug Co.*, 104 F.2d 114, 117 (9th Cir. 1939). A de facto director must fulfill those duties with the same fidelity as a de jure director. *McKeehan v. Pacific Finance Corp.*, 120 Cal.App. 578, 8 P.2d 213, 215 (Cal.App.1932). *See generally* 15 *Cal.Jur.3d* Corporations § 206; 19 *C.J.S.* Corporations § 739.

The record and prior decisions permitted the trial court to rationally determine that as de facto South Seas directors Vicente Sablan and Koyama owed fiduciary duties to the corporation. Therefore the court's finding to that effect was not clearly erroneous.

---

**5.** Note 4, *supra.* This decision determined only the ownership of the controlling shares. It did not decide or suggest that the Sablans, Kashiwa, and Koyama were never directors.

**6.** Appellants' Opening Brief 10-11, 15.

■ A strict duty of loyalty to the corporation was one of the duties owed. *Newton v. Hornblower*, 224 Kan. 506, 582 P.2d 1136, 1143, 1146 (Kan.1978); *Las Luminarias of the N.M. Council of the Blind v. Isengard*, 92 N.M. 297, 587 P.2d 444, 449 (N.M.App.1978). A director breaches that duty by intentionally or negligently facilitating the waste or mismanagement of corporate funds or property. *Ohio Drill & Tool Co. v. Johnson*, 625 F.2d 738, 742 (6th Cir. 1980). An example of such a violation is the use of corporate funds to purchase property in the director's own name. *Unicure Inc. v. Thurman*, 42 Colo.App. 241, 599 P.2d 925, 927 (Colo.App.1979). Notwithstanding the director's actual intent, the purchase constitutes a constructive fraud upon the corporation. *Id.* If two or more directors jointly participate in a breach of fiduciary duty they are jointly and severally liable. *Ohio Drill*, 625 F.2d at 742.

■ The Trial Division of this Court has recognized, as we do now, the rule of strict fiduciary responsibility. A breach of fiduciary duty occurs when an injury or loss to the corporation results from a director's: (1) negligence; (2) fraudulent misappropriation of corporate property to benefit the director or a third party; (3) acquisition of any undue personal advantage, benefit, or profit; or (4) other similar conduct sustaining injury or loss to the corporation. *South Seas Corporation v. Kashiwa*, Civil Action No. 79–0024 Memorandum Decision p. 4–5. (D.N.M.I. September 15, 1980).

■ A plaintiff alleging a breach of fiduciary duty bears the initial burden of proving that the breach occurred. *Ohio Drill*, 625 F.2d at 743 n.7. The director then must prove by clear and convincing evidence[7] that the disputed transaction or act was fair and reasonable to the corporation. *Geddes v. Anaconda Copper Co.*, 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425 (1920); *Ohio Drill*, 625 F.2d at 743 n.7; *Roche v. Golden Sky Lands*, 107 Ariz. 335, 487 P.2d 756, 758 (Ariz.1971). Non-disclo-

sure to the corporation is probative on the fairness issue. *Ohio Drill*, 625 F.2d at 743 n.7; *Roche*, 487 P.2d at 758; *Voss Oil v. Voss*, 367 P.2d 977, 979 (Wyo.1962).

■ South Seas proved that Vicente Sablan and Koyama breached their fiduciary duties. With Koyama's logistical assistance, Sablan financed his land purchase with South Seas loan funds. Neither Sablan nor H.K.F.S.C. presented credible evidence, much less clear and convincing evidence, which demonstrated that the transactions were fair and reasonable to South Seas.

■ The trial court accordingly held against Sablan and H.K.F.S.C. Sablan's liability flows directly from his breach of fiduciary duty. H.K.F.S.C. is liable as the corporate alter ego through which Koyama violated his fiduciary responsibility. Where a corporation is merely an instrumentality for wrongdoing by its owner, a court will pierce the corporate veil and hold the corporation accountable for the owner's acts. *In re Black Ranches*, 362 F.2d 19, 35 (8th Cir. 1966), *cert. denied sub nom. Black v. Brando*, 385 U.S. 990, 87 S.Ct. 596, 17 L.Ed.2d 450 (1966); *see Flemmer v. Ming*, 621 P.2d 1038, 1041–1042 (Mont.1980). Because of its equitable nature, the alter ego doctrine does not lend itself to strict rules and prima facie cases. *U. S. v. Standard Beauty Supply Stores*, 561 F.2d 774, 777 (9th Cir. 1977). The particular facts of each case determine whether a court must disregard the separate legal personalities of the corporation and the individual to accomplish the doctrine's purpose of preventing abuse of the corporate form. *Id.* The court below served that salutary purpose by applying the doctrine here.

The judgment is AFFIRMED.

---

**7.** *Newton v. Hornblower*, 224 Kan. 506, 582 P.2d 1136, 1146 (Kan.1978); *Voss Oil v. Voss*, 367 P.2d 977, 979 (Wyo.1962).