**Decided November 18, 1982**

327

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

IN THE MATTER OF THE ESTATE )   DCA 81-9002
                            )   DCA 81-9003
OF RAMONA SATUR TAISAKAN    )
                            )   CTC CIVIL ACTION NO.
                            )   79-107
                            )
                            )
                            )   OPINION
_____)

Before:   LAURETA and DUENAS, District Judges, and
          MOORE, Designated Judge*

LAURETA, District Judge:

        Appellants appeal the lower court's distribution
of the estate of decedent Ramona Satur Taisakan (Mrs.
Taisakan).  The issue is whether the findings upon which the
lower court based its distribution order were clearly
erroneous.  We conclude that they were not.  We affirm and
remand for further proceedings.

*Commonwealth Trial Court Judge Robert Moore, sitting
 pursuant to 48 U.S.C. § 1694b.

The parties are grandchildren of Mrs. Taisakan, who died in 1944.[1] Their dispute concerns the proper distribution of her estate, which consists of Lot 1774 between Garapan and Chalan Laulau on Saipan.

The point of disagreement is whether the heirs of Vicente Taisakan, one of Mrs. Taisakan's deceased sons, have any rights in the estate. Appellants contend that in a 1937 Carolinian customary oral will (partida) Mrs. Taisakan granted equal shares in the estate to six of her children and excluded Vicente and another son. Appellee maintains that Mrs. Taisakan never made a partida. He asserts that Vicente is one of seven children who became Mrs. Taisakan's heirs and that Trust Territory land records document Vicente's interest.

It is uncontested that after 1937 neither Vicente nor his heirs occupied or farmed any section of Lot 1774. With the exception of one instance, neither he nor they claimed ownership rights in the land as a matter of public record until 1976. In 1948 he filed a report of land ownership which stated that he owned Lots 1770 and 1774. In 1976 one of his heirs claimed ownership rights in conjunction with efforts to obtain part of a Micronesian Claims Commission award for war damage to Lot 1774.

— — — — — — — — —

[1] Mrs. Taisakan had eight children: Kasimoro, Vicente, Juan, Jesus, Maria, Mariana, Carmen and Rita. All of these children except Jesus are now deceased. Kasimoro died without heirs. Appellants are the children of Juan, Maria, Carmen and Rita. Appellee is Mariana's son.

In 1979 appellee successfully petitioned for appointment as administrator of Mrs. Taisakan's estate. Relying upon the alleged 1937 partida, appellants filed an objection to the proposed distribution. In 1980 appellee petitioned for final distribution of the estate to all of Mrs. Taisakan's heirs, including Vicente's heirs. Appellants did not affirmatively plead laches.

After a bench trial, the lower court held for appellee in October 1980. It found that the following documentary evidence disproved a partida and overcame testimony that Mrs. Taisakan had made a partida:

1. Administrator's Exhibits 9 and 10:

   Administrator's Exhibits 9 and 10 are Trust Territory "Determinations of Ownership" in Lot 1774. Exhibit 9 issued in 1952. Exhibit 10 issued in 1955. Both exhibits state that they issued after public notice, private notice to interested parties of record and public hearings. Both exhibits conclude that "the heirs" of Mrs. Taisakan own the land. Stating that these documents benefit from a presumption of "regularity in procedures," the lower court relied primarily upon them and included Vicente as an heir.

2. Administrator's Exhibit 2 through 8:

   Administrator's Exhibits 2 through 8 are Trust Territory "Reports of Property Owned Land" filed in 1948 by five of Mrs. Taisakan's children. Exhibit 5 is the report in which Vicente claimed ownership of Lots 1770-1774. Exhibit 4 arguably describes Vicente as one of the

330

> declarant's contiguous neighbors
> within Lot 1774. The other exhibits
> do not mention Vicente.

3. Administrator's Exhibit 11:

> Administrator's Exhibit 11 is a
> 1945 "Statement of Ownership or
> Lease" by Maria Taisakan, one of
> Mrs. Taisakan's daughters. It
> lists all eight of Mrs. Taisakan's
> children, including Vicente as the
> owners of Lots 1770 and 1774. It
> also includes a verification that
> it was translated into Chamorro
> for Maria before she signed it.

On November 10, 1980, appellants moved alternatively for relief from judgment or for a new trial. They presented three grounds for relief. First, they questioned the probative value of Administrator's Exhibits 9 and 10. They alleged that in the 1950's it was the practice of Trust Territory title officers to issue Determinations of Ownership to "the heirs" of decedents regardless of whether the decedent had made a partida. Appellants submitted their attorney's affidavit in support of this contention. The affidavit states that the attorney was "informed by others and believes" that the Trust Territory so issued Determinations in two cases not involving appellants.[2] Second, appellants argued that their exhibits supported the making of a partida whereas appellees' exhibits fail to disprove a partida. Third, appellants asserted laches against appellees for the first time in the action.

_ _ _ _ _ _ _ _ _ _

[2]Affidavit of Thomas G. Mattson, paragraph 3 (Nov. 10, 1980), appended to Motion For New Trial or Relief From Judgment, Record on Appeal 37.

The lower court re-opened proceedings for the limited purpose of hearing testimony by Benedicto Taisakan, a grandson and heir of Mrs. Taisakan who had been unavailable during trial. After hearing Benedicto's testimony the court re-affirmed its decision. The court found that Benedicto's testimony and the testimony of appellant's witness Ignacia Rogopes supplied most direct evidence on the partida issue. Concluding that Benedicto's testimony was inconsistent with both his own prior affidavit and Rogopes' testimony, the court upheld its prior ruling.

## II.

Although the existence of a custom is a mixed question of fact and law[3] which is freely reviewable[4], the "clear error" standard of Federal Rule of Civil Procedure 52(a) governs the review of factual findings concerning the execution of a partida pursuant to custom. Rule 52(a) recognizes and rests upon the trial judge's unique opportunity to weigh the evidence and to assess witness credibility.

– – – – – – – – –

[3] Lajutok v. Kabua, 3 T.T.R. 630, 634 (H.C.App.Div. 1968) (per curiam).

[4] Official Creditors Committee of Fox Markets Inc. v. Ely, 337 F.2d 461, 467 (9th Cir. 1964), cert. denied 380 U.S. 978, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965); see Pullman-Standard v. Swint, ___, U.S. ___, ___, n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982)(dictum). See generally 9 Wright & Miller, Federal Practice & Procedure: Civil § 2589 (1971).

Inwood Laboratories v. Ives Laboratories, ____ U.S. ____,
____, 102 S.Ct. 2182, 2188-2189, 72 L.Ed.2d 606 (1982).  As
we stated in South Seas Corp. v. Sablan, 525 F.Supp. 1033,
1037 (D.N.M.I.App.Div. 1981), aff'd No. 81-4629 (9th Cir.
Sept. 30, 1982)(unpublished memorandum):

> A finding is clearly erroneous when,
> even though some evidence supports it,
> the entire record produces the definite
> and firm conviction that the court below
> committed a mistake (citation omitted).
> The appellate court accords particular
> weight to the trial judge's assessment
> of conflicting or ambiguous evidence
> (citation omitted).  The test is whether
> the lower court rationally could have
> found as it did, rather than whether the
> reviewing court would have ruled diffe-
> rently (citation omitted).

These rules forcefully apply when the question is
whether a decedent made a partida.  Although Blas v. Blas,
3 T.T.R. 99, 108-109 (H.C.Tr.Div. 1966) discusses what
purports to be the "ideal" partida execution procedure, the
requirements for execution are inherently flexible.  Muna v,
Muna, 7 T.T.R. 632, 634 (H.C.App.Div. 1978).  See generally
A. Spoer, Saipan: The Ethnology of a War-Devastated Island
363-366 (1954); R. Emerick, Land Tenure Patterns in the
Marianas, printed in Land Tenure Patterns in the Trust
Territory of the Pacific Islands 225-227 (1958)(noting the
assimilation into Carolinian custom of Chamorro customary
practices of land tenure and inheritance).  Once a court

identifies the applicable custom[5], its determination of whether the decedent made a partida pursuant to custom necessarily entails a careful assessment and balancing of documentary and testimonial evidence. Therefore, we overturn that determination only if it is clearly erroneous.

///

///

///

///

///

///

///

///

///

///

///

- - - - - - - - -

[5]The court below accepted without citation of authority the parties' stipulation that under Carolinian custom the owner of land may divide the land by partida distribution and that partida execution requirements are the same under Carolinian custom and Chamorro custom. In The Matter Of The Estate Of Ramona Satur Taisakan, Civil Action No. 79-107 Order at 2 (C.T.C. Oct. 31, 1980). The sections of the Spoehr and Emerick commentaries cited in the text support the stipulation as to the similarity of partida execution under Carolinian custom and Chamorro custom. Cases have discussed the general guidelines for partida execution under Chamorro custom. See generally In The Matter Of The Estate Of Torres, DCA No. 80-9022. Opinion at 6-7 (D.N.M.I. App.Div. Dec. 2, 1981); Blas v. Blas, 3 T.T.R. 99, 108 (H.C.Tr.Div. 1966).

## III.

Appellants assert that the findings below are clearly erroneous on essentially two grounds. First, they maintain that the lower court erred as a matter of law in relying upon Administrator's Exhibits 2 through 11, and that it ignored appellant's exhibits. Second, they state that their evidence supporting the making of a partida was clear, convincing and unimpeached. We disagree with both contentions.

## A.

The lower court did not clearly err in relying upon Administrator's Exhibits 9 and 10. As appellants admit[6], these exhibits are administrative adjudications which enjoy a presumption of regularity. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). One who attacks the adjudication bears the burden of rebutting the presumption. Bergen County Util. Auth. v. E.P.A., 507 F.Supp. 780, 784 (D.N.J. 1981). The presumption may be rebutted by evidence of unfairness or prejudice in the proceedings. Cruz v. Schweicker, 645 F.2d 812, 814 (9th Cir. 1981). Courts have previously voided or disregarded Determinations of Ownership when the objecting party demonstrated that procedural irregularities occurred. See In Re Estate of Taitano, Civ. No. 269-77 [H.C.Tr.Div. August 2, 1979][overturning 1952

- - - - - - - - - -

[6]Appellants Opening Brief at 15.

Determination for failure to designate a land trustee for heirs of decedent], appeal pending Civil Appeal No. 326; Blas, 3 T.T.R. at 109.

Appellants contend, and we agree, that the presumption of regularity is rebuttable by competent and admissible evidence demonstrating that land title officers, either as a matter of policy or in a particular instance, issued Determinations regardless of the making of a partida. Land determination procedures were part of the Trust Territory's legal system in the 1950's. This legal system was required to "give due recognition to the customs of the inhabitants." Trusteeship Agreement for the Former Japanese Mandated Islands, Article 6.1, July 18, 1947, 61 Stat. 3301, T.I.A.S. No. 1665.

Appellants failed to present admissible evidence that custom was disregarded or denied recognition. The rebuttal evidence offered in paragraph 3 of their attorney's affidavit was that "others" had "informed" the attorney that partidas were denied recognition by title officers in Determinations other than the Determination for Lot 1774. Affidavit allegations are generally admissible only if based upon facts within the affiant's personal knowledge. E.g, Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir.1980). See generally 10 Wright & Miller, Federal Practice & Procedure: Civil § 2738 (1973)(affidavit used in summary judgment motions) The paragraph 3 allegations were founded upon hearsay. See

Western Spring Service Co. v. Andrew, 229 F.2d 413, 419
(10th Cir. 1956)(affidavit alleging misconduct and based
upon a third party's statements to the affiant held to be
hearsay).  The allegations did not fit within a specific
exception to the hearsay exclusion rule.  They also did not
contain sufficiently detailed or extensive facts to circums-
tially guarantee paragraph 3's trustworthiness, and thus
justify its consideration under the "catch-all" exception
of Trust Territory Rule of Evidence 803(24).  Therefore,
the lower court properly refused to consider paragraph 3.
Thus, in the absence of admissible rebuttal evidence, the
court below rationally gave weight to and relied upon
Administrator's Exhibits 9 and 10.

The lower court apparently considered Administrator's
Exhibits 2 through 8 and 11 without according them a pre-
sumption of validity.  This approach was correct.  The
exhibits are claims of ownership rather than administrative
adjudications upon notice and hearing.  Moreover, the exhibits
date from the years 1945 and 1948.  Three of the earliest
reported High Court decisions took judicial notice that no
adequate system for resolving land claims existed on Saipan
before the promulgation of Land and Claims Regulation No. 1
on January 9, 1951.  See Esebei v. Trust Territory, 1 T.T.R.
495, 502 (H.C.Tr.Div. 1958); Rusasech v. Trust Territory, 1
T.T.R. 472, 476 (H.C.Tr.Div. 1958); Santos v. Trust Territory,
1 T.T.R. 463, 469 (H.C.Tr.Div. 1958).  Administrator's Exhi-

bits 2 through 8 and 11 were properly considered without presumption of regularity or validity.

Appellants attack the Administrator's Exhibit 11 [Maria Taisakan's 1945 Statement of Ownership or Lease] on the ground that Maria may not have truly understood what she was signing. Noting that English was a new and alien language on Saipan in 1945, they reason that a court may justifiably question the accuracy of the sequential English-Chamorro translation of "ownership" language in the exhibit. Appellants specifically question whether the Chamorro translation of the English word "own" meant "own" to Maria as applied to Lot 1774, a parcel of Carolinian land. This argument would carry substantial force if sustained by record evidence. Yet, appellants conspicuously failed to adduce any evidence that Maria in fact did not understand the translated exhibit as verified. Therefore, on the record before us we must reject appellants' contention.

We further observe that: (1) Administrator's Exhibit 4 (Maria's 1948 Report of Property Owned Land) lists Vicente Taisakan as the owner of a Lot 1774 parcel adjacent to Maria's; and that (2) Vicente actually asserted an ownership interest in the lot in Administrator's Exhibit 5 (Vicente's 1948 Report of Property Owned Land). After examining Administrator's Exhibits 4, 5, 9, 10 and 11, we are not definitely and firmly convinced that the lower court erred in finding that these exhibits prove Vicente's ownership interest in Lot 1774.

Although appellants charge that the court below ignored their documentary evidence, the record amply demonstrates the court's active attention to appellants' exhibits[7] The court disbelieved rather than ignored the exhibits. Its evident conclusion that appellee's exhibits were more credible than appellants' was a determination which the record rationally allowed.

B.

The lower court also reasonably concluded that appellee's testimony was more credible than the testimony of appellants' main witnesses, Ignacia Rogopes and Marcella Rabauliman. The court had the unique opportunity to·observe and to evaluate witness demeanor. In addition, appellee testified against his own property interests[8] whereas, Rogopes' and Rabauliman's testimony protected their property interests[9]. The lower court· rationally could have weighed these considerations and concluded that appellee was more credible than Rogopes or Rabauliman.

_ _ _ _ _ _ _ _

[7] E.g., TA 13-14, 21-22, 28-30.

[8] Appellee is one of the owners and current occupants of Lot 1774. Judicial recognition of Vicente's heirs' ownership interest in the lot would necessarily diminish appellee's proportional interest.

[9] Rogopes and Rabauliman are partial owners of Lot 1774. The conclusion that Vicente's heirs are also partial owners would diminish their holdings.

We agree with appellants that the Trial Court misapprehended Benedicto Taisakan's courtroom testimony as inconsistent with his prior affidavit. Although his testimony and his affidavit speak in different verbal tenses, they do indicate that Mrs. Taisakan affirmed that she had made a partida. Nevertheless, Benedicto's testimony and affidavit neither qualitatively nor quantitatively outweigh the contrary evidence upon which the lower court relied. For purposes of clear error review, the court did not erroneously uphold its initial decision.

C.

As the discussion above indicates, appellants' evidence of the 1937 partida was far from clear, convincing and unimpeached. The evidence was conflicting and presented a close case which the lower court rationally decided for appellee. An appellate court cannot substitute its interpretation of the evidence for the trial court's simply because the reviewing court might have resolved the factual ambiguities differently. Inwood Laboratories, ____ U.S. at ____, 102 S.Ct. at 2190. Although appellants' post-trial motions framed a colorable issue of laches, the court below was well within its discretion in dismissing the issue as untimely raised. Under Commonwealth Trial Court Rule of Civil Procedure 8(c), laches is an affirmative defense. The

court was entitled to treat the defense as waived by appellants' failure to plead it in objection to appellee's petitions. 5 Wright & Miller, Federal Practice & Procedure: Civil § 1278 at 339-341 and n. 36 (1969).

The judgment is affirmed. The lower court's order of October 31, 1980 indicates that additional court motions by appellee will be necessary to effect the division or the lease of Lot 1774. We accordingly remand for further proceedings.

DATED this _____ day of November, 1982.

ALFRED LAURETA
United States District Judge

CRISTOBAL C. DUENAS
United States District Judge

ROBERT MOORE
Designated Judge