APPELLATE DIVISION

CARMEN M. PANGELINAN,      )      CIVIL APPEAL NO. 82-9012
SANTIAGO C. MASGA, ADAN C.)      CTC CIVIL ACTION NO. 80-242
MASGA and ADAN M. MASGA,   )
                           )
            Appellees,     )
                           )
     vs.                   )           O P I N I O N
                           )
ANTONIA M. TUDELA,         )
                           )
            Appellant.     )
_____)

Before:   Laureta and Enright, District Judges, and Moore,
          Designated Judge*

MOORE, Designated Judge:

     The above matter is before us on appeal from the judgment
of the Commonwealth Trial Court.  Appellees herein appealed
to the Trial Court from a determination of Land Registration
Team dated June 7, 1977 that Antonia M. Tudela, appellant
herein, was the individual owner of Lot 202 E 04, Registered
March 3, 1977, "Miingao."  The Land Commission approved the
Land Team determination on August 21, 1980.

*Commonwealth Trial Court Judge sitting pursuant to 48 U.S.C.
§1694b.

The Trial Court found that Antonia M. Tudela was not the owner of said property because (1) her father had not received it as part of a "partida" from his father and (2) her uncle's children, her cousins, did not receive proper notice of a hearing at which her uncle personally attempted to relinquish his right, if any, in said property to appellant.

Vicente Masga, "original" onwer of the land in question plus other lands, had three sons, Adan, Gabriel, and Andres. Andres, unmarried, died at the outbreak of World War II. Vicente Masga and his blind wife lived with Gabriel and his wife. Although Gabriel had six children, Antonia M. Tudela, appellant, born 1937, is his sole surviving heir.

Vicente's son, Gabriel, farmed the land in question along with the Uyulang Exchange Parcel and his other son farmed all of Vicente Masga's other lands. The appellant claims and appellees deny that this division of land was, in effect, a "partida."

There are uncertainties as to rights under Chamorro customary land law arising from the unintentional tendency to impose or read into Chamorro concepts other concepts foreign to and unsuitable to Chamorro culture.

Under Chamorro custom a father should at some time before his death, call his family together and designate a division of all family lands and ancestoral lands, including

those brought in by the wife, among his children. This is usually with the consent of wife and children, but the father's word is not to be disputed though he is expected to act fairly under Chamorro standards. This "partida" is a serious and important matter in which all members of the family are expected to participate and take note. The father may turn over formal ownership and control at once or he may retain ownership and control until some later date or until he dies. Blas v. Blas, 3 T.T.R. 108 (1966).

█ Apparently, the Trial Court found insufficient evidence to support a "partida" and this court should not disturb the finding of the Trial Court unless it is clearly erroneous. (See, South Seas Corp. v. Sablan, 525 F. Supp. 1033 (D.C.N.M.I. 1981), aff'd, no. 81-4629 (9th Cir. Sept. 30, 1982) (unpublished memorandum). The Trial Court's finding with respect to partida is not clearly erroneous nor against the weight of the evidence and further we are not left with a definite and firm conviction that the Trial Court has made a mistake.

█ Nevertheless, and in spite of the fact that all formal requirements of a "partida" may not have been met, we are satisfied that Vicente Masga did intend to divide his property between his two living sons. Further, we note that Adan Masga and his sons actually farmed Miingao but only after they had asked for and received permission to do so from Rosa Taisacan, appellant's mother and Gabriel's wife. The fact that appellees requested such permission is strong

711

evidence that they, in fact, recognized Gabriel Masga's
right in the land. We find that Vicente Masga did intend to
give Miingao to Gabriel Masga although he failed to satisfy
the requirements of a partida. Further, we are satisfied
that the entire family knew of Vicente Masga's wishes.

Next, we must determine whether the Trial Court erred
in deciding that the Land Team incorrectly determined
that Antonia M. Tudela to be owner of Lot 202 R 04 "Miingao."

Following World War II, land administration within the
Trust Territories was in such a confused state, it became
expedient, if not absolutely necessary, to establish a Land
Commission to proceed on a systematic geographical basis to
accomplish promptly the registration of as much land as
practical within registration areas within its district.
Each commission was empowered to determine ownership of land
within its district but it was to avoid lengthy consideration
of disputed claims that would unduly delay the registration
program. 67 T.T.C. §101.

Land Registration Teams were appointed within areas to
institute preliminary inquiry regarding title to lands
within its area and to record the same for hearing if satisfied
that claims were justified. 67 T.T.C. §107. After claims
against lands were recorded, the team, after notice, would
proceed to hear the parties and witnesses and to adjudicate
conflicting claims, subject to review by the Commission.

Settlement agreements were to be given the same force and effect as a decision of the Commission.  67 T.T.C. §107. [Our emphasis].  Notice to interested parties was required thirty days prior to the adjudicative hearing.  If the team found an individual interested party to be incompetent or a minor, it was required to appoint a representative, if one had not already been appointed.  67 T.T.C. §113.

An "aggrieved party" had the right of appeal to the courts within 120 days of the date of adjudicative determination. 67 T.T.C. §115.  After the appeal period, if no appeal had been taken, the Commission issued a Certificate of Title for registration.  67 T.T.C §§117 and 118.

Judicial review of decisions of administrative agencies should be limited to "whether the agency's action was arbitrary or capricious, unreasonable, or an abuse of discretion." 2 Am. Jur. 2d, Administrative Law, §620 at 467 (1962).  The Trial Court did not find the Land Commission's action to be arbitrary, capricious, unreasonable, or an abuse of discretion.

Appellees herein claim that on occasion since 1969, Adan Masga had acted peculiarly in that he became forgetful and disoriented and he at one time sold some land for only $25.00.  In February, 1972, Adan claimed Miingao.  In March, 1972, Adan Masga designated his daughter, Carmen Pangelinan,

as land trustee of "all my properties on Rota" and a week later he gave a power of attorney to Carmen "to make all claims to my land, so authorizing to transact any document and/or documents to any land property which I own." Appellees have not questioned his competency to execute those documents. In September, 1972, Santiago, Adan's son, represented him at a hearing of the Land Team. In October, the Land Team initially determined Adan to be owner of Miingao, but Antonia M. Tudela interposed her claim. Later, at a hearing, Adan personally filed an affidavit relinquishing his claim to Antonia. Additionally, the Land Team found "it is public knowledge that this land is owned by Antonia Masga Tudela." At this point, appellees claim Adan was incompetent and the land team should have known about his incompetency or at least inquired therein. Parenthetically, the two affidavits by Adan in Carmen's favor were within the knowledge or could have been within knowledge of one or more team members.

Generally, the law presumes a person to be sane until he is proved to be insane. 41 Am. Jur. 2d, Incompetent Persons, §129 at 665 (1968). In this case the Land Team had the power and authority to find Adan to be incompetent and to appoint a representative. They did not do so although they could observe him in several respects at the hearing in October 1972. Because the law presumes a person to be sane until the contrary is shown, the land team could impliedly deem Adan Masga to be competent and it could therefore consider his

714

affidavit by which he relinquished his rights to Antonia M. Tudela to be a matter already decided between the same parties or those under whom the present parties claim. 67 T.T.C. §112. Adan's children at the time he relinquished his claim, if he did, had a mere inchoate right in Adan's lands while he was living and only in lands of which he had not disposed.

The Trial Court in this case did not find Adan to have been insane. The Trial Court found merely that there was a "serious question as to Mr. Adan Masga's competency on that date." Finding a serious question of competency falls far short of a finding of incompetency. Since the Land Team based its determination of ownership in Antonia M. Tudela on Adan Masga's affidavit of relinquishment coupled with public knowledge that this land belonged to Antonia Tudela, that determination should not be disturbed absent a finding that Adan Masga was insane or incompetent at the time he issued his affidavit.

Certainly Adan Masga had knowledge of the hearing which he attended and at which he relinquished his rights in Miingao. Adan's heirs had only an inchoate right in his lands, and therefore, notice to Adan Masga was notice to his heirs.

We do not reverse the Trial Court because there was a partida but rather we reverse because Adan Masga voluntarily

relinquished any interest he might have had in Miingao to Antonia M. Tudela.

On the issue of notice, we hold that the findings and decision of the Trial Court are clearly erroneous and we are firmly convinced that a mistake has been committed.

We reverse the decision of the Trial Court and we affirm the determination of the Land Team and Land Commission.

Entered this _15th_ day of _August_, 1983.

ALFRED LAURETA, District Judge

WILLIAM B. ENRIGHT, District Court

ROBERT L. MOORE, Designated Judge

716