## ROMAN CATHOLIC DIOCESE OF SAMOA PAGO PAGO,
### Appellant

v.

## AVEGALIO, LEALAIALOA, and AIGAMAUA FAMILIES,
### Appellees

High Court of American Samoa
Appellate Division

AP No. 33-90

March 11, 1992

70

Before RICHMOND, Associate Justice, GOODWIN,* Acting Associate Justice, MUNSON,** Acting Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel:     For Appellant, Charles V. Ala'ilima
             For Appellees, Aitofele T. Sunia

MUNSON, J.:

This matter comes before the Court on appeal from the Land and Titles Division.

Procedural History

This appeal stems from the November 6, 1990, decision of a three-judge panel of the Land and Titles Division. The decision involved several consolidated quiet title lawsuits filed in the early 1980s, which concerned title to flat and sloped land in the Leone Valley.[1] Numerous long-standing boundary disputes between sundry parties were addressed

---

* Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

** Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, serving by designation of the Secretary of the Interior.

[1] The cases were consolidated and the court bifurcated the proceedings for ease of adjudication. There are at least two other appeals which grew out of this litigation: Siaumau v. Willis, AP No. 30-90, and Willis v. Fai'ivae Galea'i, AP No. 31-90.

71

and resolved in those lawsuits; however, this appeal involves only that portion of the Land and Title Division's decision which awarded approximately one-third of an acre to appellees, the Avegalio, Aigamaua, and Lealaialoa communal families.[2] The decision was based on adverse possession principles, as codified in A.S.C.A. § 37.0120(a).

Appellant Church intervened below when it learned that appellees were claiming a portion of the land which the Church believed it had acquired as a freehold land grant in 1896.

## Facts

For purposes of this appeal, the following facts are relevant:

In 1896, the Roman Catholic Church acquired approximately three acres of land under a freehold award from the Apia Land Commission. This award was approved by the Supreme Court of Apia and, subsequently, by the United States when Tutuila was ceded to it in 1900.

The land came to be known as the "Sisters' land," because it was used by the Marist Sisters to help support a Catholic school in Leone village. During World War II a portion of the land was used as a rifle range by the U.S. Marines. Many coconut trees which had been planted prior to the war were cleared by the Marines, but some remained. Testimony at trial conflicted as to who used the land after the war, in the 1950s and 1960s.

## Issue

1. Was there sufficient evidence to support the trial court's factual finding that appellees had acquired title to the disputed one-third acre by adverse possession?

## Standard of Review

---

[2] Appellees assert, and it does not appear to be contradicted, that appellee communal families "exist separate and distinct from one another in the traditional sense but their affairs and customary activities are administered by the same group of individuals, who are close blood relatives."

72

A trial court's factual determinations are reviewed for "clear error" and questions of law or mixed questions of law and fact are reviewed de novo. Temengil v. Trust Territory of the Pac. Islands, 881 F.2d 647, 649 (9th Cir. 1989), (citing United States v. McConney, 728 F.2d 1195, 1199-1204 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984)), cert. denied, 496 U.S. 925 (1990).

A finding is "clearly erroneous" when the entire record produces the definite and firm conviction that the court below committed a mistake. South Seas v. Sablan, 525 F. Supp. 1033, 1037 (D.N.M.I. 1981), aff'd mem., 691 F.2d 508 (9th Cir. 1982). The reviewing court accords particular weight to the trial judge's assessment of conflicting and ambiguous facts. Id. The "clearly erroneous" standard of review is "particularly appropriate" where the findings are based in part on the trial court's evaluation of conflicting evidence and live testimony. Enrici v. Commissioner of Internal Revenue, 813 F.2d 293 (9th Cir. 1987).

Analysis

Appellant argues that there was insufficient evidence produced at trial to support the trial court's determination that appellee families had met the statutory requirements for acquiring title by adverse possession.

In Part IV(D) of its November 6, 1990, decision, the trial court found that the only direct testimony with respect to the occupation of the area in dispute came from Chief Avegalio Pesamino, who testified on behalf of appellees. He stated that he and his family and the girls from the Catholic school cultivated the disputed land side-by-side during the 1950s, that relations between the people were friendly, and that both sides observed the boundary as it was reflected in the Avegalio survey (which showed a straight line, and not the meandering line shown on appellant's survey map).

Chief Avegalio left the island in 1957 and did not return until 1968. By the time he returned the school had closed and members of appellees' communal families had built houses on their land (although not on the piece at issue below) and were making use of all the land, including the disputed portion.

The trial court further found that the court's on-site inspection of the land, as well as a 1971 aerial photograph, confirmed that the boundary as shown by appellees reflected the actual boundary of their occupation of the land, at least for the statutory adverse possession period

73

of twenty years, and perhaps much longer. The court expressly stated that

> [a] 1963 aerial photograph cited by [appellant] as evidence of a different boundary is very difficult to read and provides no support for either side.

The court held that although it was "possible" that appellees had not in fact occupied the land for the requisite twenty years, "the contrary testimony of Avegalio is credible as well as uncontradicted."

Appellant argues that the trial court erred in its decision because the evidence supported a finding that there was no adverse possession by appellees. Appellant relies primarily upon the testimony of a witness named So'oto. So'oto testified that the land in question (and adjacent land) was unoccupied in the 1950s and early 1960s and that everyone felt free to make use of the coconut trees found there. He further testified that it was not until the Kruse family (who are related to appellees) moved onto the land that definite boundaries were established. Appellant claims support for this position from the aerial photographs taken over the years, which do not show identifiable boundaries until the aerial photograph from 1971. From this appellant argues that appellees had not occupied the land for the requisite twenty years[3] at the time this litigation commenced.

Appellees agree with the trial court that Chief Avegalio's testimony was undisputed. They note that he testified that appellees occupied and cultivated the disputed property without objection from any person from at least the time the Chief was a small boy and, according to oral family tradition, from the time of his grandparents. As to So'oto's seemingly contradictory testimony, appellees say that So'oto never testified about this particular piece of disputed land, but only about others.

Appellees also assert that the testimony of the elders of Legaoa was consistent with Chief Avegalio's testimony that appellant had never

---

[3] The adverse possession statute was amended in 1982 to change the former twenty-year possession requirement to the current thirty-year requirement. Under the former version of the statute, title could be acquired via adverse possession provided that occupancy began at least twenty years prior to the 1982 amendment's effective date.

had anything to do with the property, other than that occasionally girls from the school would go upon it to collect coconuts for cooking.

Finally, appellees note that appellant did not even send a representative when the court went to the land for an on-site viewing, and that this indicates that appellant really had no idea if it owned the land or not.

This court is limited in its review to a determination of whether or not the decision of the trial court was clearly erroneous. We cannot say that it was. The trial court had the opportunity to visit the land in question with the parties, and hear each party describe where that party believed the boundary should be, and why. The trial court was also uniquely situated to listen to the witnesses and hear testimony based upon their personal knowledge, to study their demeanor, and to judge their credibility. When a trial court's findings are based on the court's decision to credit testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error. Clady v. Los Angeles County, 770 F.2d 1421 (9th Cir. 1985), cert. denied, 475 U.S. 1109 (1986). Finally, the trial court had before it all aerial photographs and was best able to determine the relative support the photographs gave to the position of each party.

We conclude that the decision of the trial court is supported by the evidence and is not clearly erroneous, and we therefore AFFIRM.